| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| WRIGHT, FINLAY & ZAK, LLP<br>Nichole L. Glowin, Esq. SBN 262932<br>4665 MacArthur Court, Ste. 280<br>Newport Beach, CA 92660<br>TEL: (949) 477-5050<br>FAX: (949) 608-9142<br>nglowin@wrightlegal.net<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>CHUL HYUN GONG dba PAX AMERICA DEVELOPMENT<br><br><br><br><br><br><br><br>                                              Debtor(s). | CASE NO.: 2:15-bk-12452-RK<br><br>CHAPTER: 7<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)**<br><br>DATE: 4/28/2015<br>TIME: 10:30 am<br>COURTROOM: 1675 |

**Movant:** The Bank of New York Mellon fka The Bank of New York as Trustee for the Certificateholders of the CHL Mortgage Pass-Through Trust 2004-13, Mortgage Pass-Through Certificates, Series 2004-13, its successors and/or assigns

1. **Hearing Location**:

☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 03/30/2015

WRIGHT, FINLAY & ZAK, LLP
Printed name of law firm (if applicable)

Nichole L. Glowin
Printed name of individual Movant or attorney for Movant

/s/ Nichole L. Glowin
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014    Page 2    F 4001-1.RFS.RP.MOTION

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 6393 Anguilla Avenue
   *Unit/suite number*:
   *City, state, zip code*: Cypress, CA 90630

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __1___):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary   bankruptcy petition under chapter   ☒ 7  ☐ 11  ☐ 12  ☐ 13 was filed on (*date*) __02/18/2015__.

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

   c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay**:

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

       (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☒ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☒ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☒ Other (*see attached continuation page*). See Continuation Page at Page 6 herein.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 3                              **F 4001-1.RFS.RP.MOTION**

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
         ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☒ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

    a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

    b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion: (D**eclaration(s) MUST be signed under penalty of perjury and attached to this *motion***)**

    a. The REAL PROPERTY DECLARATION on page 6 of this motion.

    b. ☐ Supplemental declaration(s).

    c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

    d. ☒ Other:
         Note, Deed of Trust, Assignment, Grant Deeds, Prior BK Orders and Appraisal Report.

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                         Page 4                                  **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.  Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

12. ☐ If relief from stay is not granted, adequate protection shall be ordered.

13. ☐ See attached continuation page for other relief requested.

Date:  03/30/2015

WRIGHT, FINLAY & ZAK, LLP
_____
Printed name of law firm (*if applicable*)
Nichole L. Glowin
_____
Printed name of individual Movant or attorney for Movant

/s/ Nichole L. Glowin
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                Page 5                        **F 4001-1.RFS.RP.MOTION**

Continuation Page

Paragraph 4(a)(2)(B), 4(a)(2)(D), 4(a)(2)(F) and 4(d)(1) and (d)(2):

## GROUNDS ESTABLISHING 362(d)(4) BAD FAITH IN REM RELIEF:

On April 29, 2004, Jay Hong ("Borrower) executed a Note ("Note") in the amount of $488,000.00 secured by a Deed of Trust recorded on the property located at 6393 Anguilla Avenue, Cypress, CA 90630 ("Property") (See Exhibit 4, Note and Exhibit 3, Deed of Trust attached hereto). Borrowers defaulted under the Note and Deed of Trust thereby causing a foreclosure sale to be set on the Property for 01/07/2015.

As part of a scheme to hinder, defraud and delay foreclosure Borrower executed several grant deeds transferring interests in the Property to individuals and several defunct corporations throughout the foreclosure process. Specifically, the following Grant Deeds were executed:

| Date | Recording Number | Transferor | Transferees |
|------|------------------|------------|-------------|
| 05/14/2012 | 2012000272992 | Jay Hong | Jay Hong<br>Pax America Development, LLC<br>1421 Western Ave., Inc. |
| 08/28/2012 | 2012000496725 | 1421 Western Ave., Inc. | Pax America Development, LLC<br>Young Ok Hong<br>Unimae |
| 01/05/2015 | 2015000001757 | Jay Hong | Pax America Development, LLC<br>Pac Bay Window<br>KSL Media<br>Coastline Manufacturing<br>Unimae |

A copy of the 05/14/2012 Grant Deed is attached hereto as Exhibit 10. A copy of the 08/28/2012 Grant Deed is attached hereto as Exhibit 8. A copy of the 01/05/2015 is attached hereto as Exhibit 2.

As a result of the multiple transfers of the Property several bankruptcy cases were filed affecting the Property. Specifically, the following list of bankruptcy cases were filed affecting the Property by the relevant individuals and business entities:

| Date | Bankruptcy Case Number | Entity Filed | Status of Case |
|------|------------------------|--------------|----------------|
| 02/08/2013 | 2:13-bk-13280 | Pax America Development | Dismissed on 04/08/2013 |
| 07/08/2014 | 2:14-bk-23028 | Pax America Development | Dismissed on 09/22/2014 |
| 06/26/2013 | 2:13-bk-26527 | Pax America Development | Dismissed on 08/23/2013 |
| 12/12/2010 | 2:10-bk-62980 | Pax America Development | Discharge Not Applicable |
| 09/24/2014 | 2:14-bk-28152 | Pax America Development | Dismissed on 11/25/2014 |
| 08/27/2013 | 2:13-bk-31459 | Pax America Development | Dismissed on 10/24/2013 |
| 12/09/2014 | 2:14-bk-32741 | Pax America Development | Dismissed on 02/20/2015 |

| 01/23/2014 | 2:14-bk-11276 | Pax America Development | Dismissed on 03/28/2014 |
|---|---|---|---|
| 04/24/2014 | 2:14-bk-17883 | Pax America Development | Dismissed on 06/30/2014 |
| 04/11/2013 | 2:13-bk-19447 | Pax America Development | Dismissed on 06/21/2013 |
| 11/05/2013. | 2:13-bk-36691 | Pax America Development | Dismissed on 01/08/2014 |
| 08/19/2009 | 2:09-bk-32057 | Unimae | Dismissed on 09/10/2009 |
| 08/28/2009 | 2:09-bk-21251 | Unimae | Dismissed on 12/22/2009 |
| 09/04/2013 | 2:13-bk-32159 | Unimae | Dismissed on 01/15/2014 |
| 06/10/2013 | 2:13-bk-25141 | Unimae | Dismissed on 08/23/2013 |
| 03/31/2014 | 2:14-bk16037 | Unimae | Dismissed on 05/30/2014 |
| 08/12/2014 | 2:14-bk-25456 | Unimae | Dismissed on 10/22/2014 |
| 07/31/2009 | 2:09-bk29921 | Unimae | Dismissed on 09/30/2009 |
| 05/31/2012 | 2:12-bk-29051 | Unimae | Dismissed on 08/06/2012 |
| 08/14/2012 | 2:12-bk-37712 | Unimae | Dismissed on 10/11/2012 |
| 03/29/2013 | 2:13-bk-18184 | Unimae | Dismissed on 05/24/2013 |
| 10/15/2012 | 2:12-bk-44601 | Unimae | Dismissed on 01/24/2013 |
| 11/08/2013 | 2:13-bk-36993 | Unimae | Dismissed on 03/26/2014 |
| 02/06/2013 | 2:13-bk-13130 | Unimae | Dismissed on 02/04/2014 |
| 06/10/2014 | 2:14-bk-21316 | Unimae | Case Still Pending |
| 08/11/2009 | 6:09-bk-28324 | Coastline Manufacturing, LLC | Case Closed on 01/29/2015 |
| 08/11/2009 | 6:09-bk-28328 | Pac Bay Window, LLC | Case Closed on 01/29/2015 |
| 08/11/2009 | 6:09-bk-28324 | Pac Bay Window, LLC | Case Closed on 01/29/2015 |
| 08/15/2008 | 1:08-bk-16036 | KSL Media, Inc. | Case Closed on 09/19/2013 |
| 09/11/2013 | 1:13-bk-15929 | KSL Media, Inc. | Case Still Pending |
| 02/15/2014 | 2:14-bk-12889 | Chul Hyun Gong | Dismissed on 05/14/2014 |
| 01/06/2015 | 8:15-bk-10058 | Young Ok Hong | Dismissed on 01/29/2015 |

True and correct coies of the PACER Reports evidencing these the Bankruptcy filings for Pax America Development, Unimae, Coastline Manufacturing, LLC, Pac Bay Window, LLC and KSL Media are attached hereto as Exhibit 11, collectively. True and correct copies of the Orders Dismissing the individual bankruptcy cases for Chul Hyun Gong and Young Ok Hong are attached hereto as Exhibits 7 and 9, respectively.

11 U.S.C. Section 362(d)(4) states that bad faith in rem relief may be granted if a Debtor's bankruptcy case has been used as part of a scheme to hinder, delay or defraud foreclosure and such scheme involves an authorized transfer of an interest in the property and/or multiple bankruptcy filings affecting the property (See 11 U.S.C. Section 362(d)(4)). Additionally, the Central District of California recently entered a ruling in the matter of In re 4th Street Investors, Inc. ___ B.R.____, 2012 WL 2562660, at *1 (Bankr. C.D. Cal. June 29, 2012) which states that a court may grant in rem relief under Section 362(d)(4) if the filing of a seemingly innocent debtor's bankruptcy case was part of a scheme to hinder, defraud and delay the moving party undertaken by the original borrower under the Note and Deed of Trust.

In this case grounds clearly exist to grant in rem relief under Section 362(d)(4) as the original Borrower executed several unauthorized grant deeds transferring title of the Property as a gift for no consideration to several individuals and business entities, all of which have filed numerous bankruptcy petitions post-default which have stalled

Movant's foreclosure. Movant therefore respectfully requests that this Court grant them in rem relief pursuant to 11 U.S.C. § 362(d)(4) as the multiple transfers of the property and multiple bankruptcy filings are part of a clear scheme to hinder, defraud and delay Movant.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) ___Alicia Wood_____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):

   c. ☒ Other (*specify*):   I am employed by Residential Credit Solutions, Inc., servicer of the Note and Deed of Trust for the Movant. Pursuant to the servicing agreement between the Parties and my oversight of loan I am authorized to attest to the facts set forth in this Declaration.

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached):*

3. The Movant is:

   a. ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _3 & 5_.

   c. ☐ Servicing agent authorized to act on behalf of the:

   ☐ Holder.
   ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:

   *Street address*: 6393 Anguilla Avenue
   *Unit/suite no.*:
   *City, state, zip code*: Cypress, CA 90630

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

   2004000397260, Orange County, CA. See also Exhibit "1" attached hereto, Legal Description.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

   a. ☐ Debtor's principal residence        b. ☒ Other residence
   c. ☐ Multi-unit residential              d. ☐ Commercial
   e. ☐ Industrial                          f. ☐ Vacant land
   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☒ Other (*specify*): Pax America Development, Pac Bay Window, KSL Media, Coastline Manufacturing, Unimae

   e. ☒ The Debtor ☐ did ☒ did not   list the Property in the Debtor's schedules.

   f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.

      The deed was recorded on (*date*) __01/05/2015__.  A copy of the Grant Deed is attached hereto as Exhibit 2.

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit __3____.

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
      attached as Exhibit __4____.

   c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
      trust to Movant is attached as Exhibit __5____.

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 456,577.13 |
| b. | Accrued interest: | $ | $ | $ 174,138.88 |
| c. | Late charges | $ | $ | $ 0.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 4,507.45 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 44,550.49 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[0.00          ] |
| g. | TOTAL CLAIM as of (*date*): 03/23/2015 | $ | $ | $ 679,773.95 |

   h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):

   a. Notice of default recorded on (*date*) __06/27/2014__ or ☒ none recorded.

   b. Notice of sale recorded on (*date*) __12/10/2014__ or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) __01/07/2015__ or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date. NO POST-PETITION PAYMENTS HAVE BEEN MADE WHATSOEVER.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ 7,180.66 for the month of March 20 15 .

    b. Number of payments that have come due and were not made: 74 . Total amount: $ 244,714.16

    c. Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $ 7,180.66 will come due on (*date*) 04/01/2015 , and on the 1st day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d. The fair market value of the Property is $ 618,000.00 , established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☒ Other (*specify*):

            Appraisal Report, a true and correct copy of which is attached hereto as Exhibit 6.

    e. **Calculation of equity/equity cushion in Property:**

        Based upon ☒ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Bank of New York Mellon et.al. | $ | $ 679,773.95 |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** 679,773.95 | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit 3,4,5 and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☒ Other (*specify*): Note, Deed of Trust and Assignment

    g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 0.00 and is 0 % of the fair market value of the Property.

    h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ -61,773.95 .

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page ● 11                    **F 4001-1.RFS.RP.MOTION**

i. ☒ Estimated costs of sale: $ 49,440.00_____ (estimate based upon __8_____% of estimated gross sales price)

j. ☒ The fair market value of the Property is declining because:
Depressed real estate market conditions.


12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                         $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                                    $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                    $[                          ]

    TOTAL POSTPETITION DELINQUENCY:              $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

    $_____ received on (*date*) _____
    $_____ received on (*date*) _____
    $_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☒ Other (*specify*):

        Debtor and multiple other parties have been transferred interests in the Property as a gift for no consideration and have filed bankruptcy petitions to stall Movant's foreclosure. See Continuation Page at Page 6 herein.

18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☒ Multiple bankruptcy cases affecting the Property include:

        1. Case name: Chul Hyun Gong

            Chapter: 7    Case number: 2:14-bk-12889-VZ

            Date filed: 02/15/2014    Date discharged: _____    Date dismissed: 05/14/2014
            Relief from stay regarding the Property ☐ was ☐ was not granted. A copy of the Order dismissing this Case is attached hereto as Exhibit 7.

        2. Case name: Young Ok Hong

            Chapter: 7    Case number: 8:15-bk-10058-CB

            Date filed: 01/06/2015    Date discharged: _____    Date dismissed: 01/29/2015
            Relief from stay regarding the Property ☐ was ☐ was not granted. A copy of the Grant Deed transferring title to this Debtor and the Order Dismissing this Case are attached hereto as Exhibits 8 and 9.

        3. Case name: _____

            Chapter: _____    Case number: _____

            Date filed: _____    Date discharged: _____    Date dismissed: _____
            Relief from stay regarding the Property ☐ was ☐ was not granted.

            See Continuation Page at Page 6 herein.

    ☒ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☒ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors. See Continuation Page at Page 6 herein for bad faith history.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____        Alicia Wood - Vice President        _____
03/31/15
Date                        Printed name                        Signature

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4665 MacArthur Court, Ste. 280, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _03/30/2015_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Wesley Avery, Ch. 7 Trustee: wamiracle6@yahoo.com
United States Trustee: ustpregion16.la.ecf@usdoj.gov
Nichole Glowin, Counsel for Movant: nglowin@wrightlegal.net
Gilbert Weisman, Counsel for American Express Bank, FSB, Courtesy Notice: notices@becket-lee.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _03/30/2015_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Robert N. Kwan
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1682 / Courtroom 1675
Los Angeles, CA 90012

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 03/30/2015 | Brandon Quon | /s/ Brandon Quon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 4001-1M.RP**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| CHUL HYUN GONG dba PAX AMERICA DEVELOPMENT | Debtor(s). | CASE NO.: 2:15-bk-12452-RK |

**ADDITIONAL SERVICE INFORMATION** (if needed):

Chul Hyun Gong
2342 Mountain Ave
La Crescenta, CA 91214
DEBTOR

Wesley H Avery (TR)
28005 Smyth Drive #117
Valencia, CA 91355
CHAPTER 7 TRUSTEE

Jay Hong
6393 Anguilla Avenue
Cypress, CA 90630
INTERESTED PARTY/ORIGINAL BORROWER

Young Ok Hong
6393 Anguilla Ave
Cypress, CA 90630
INTERESTED PARTY/ALLEGED PARTIAL OWNER

Pax America Development
Attn: Kevin K. Choe, Agent for Service
3600 Wilshire Blvd., Ste. 722
Los Angeles, CA 90010
INTERESTED PARTY/ALLEGED PARTIAL OWNER

Pax America Develoment
Attn: Managing Agent
137 N. Larchmond Blvd. #607
Los Angeles, CA 90004
INTERESTED PARTY/ALLEGED PARTIAL OWNER

Unimae
Attn: James Jang, Agent for Service
304 S. Plymouth Blvd.
Los Angeles, CA 90020
INTERESTED PARTY/ALLEGED PARTIAL OWNER

1421 Western Avenue, Inc.
Attn: Ted Kim, Agent for Service
1417 S. Western Avenue
Los Angeles, CA 90006
INTERESTED PARTY/ALLEGED PARTIAL OWNER

Pac Bay Window
Attn: Lourdes Garthwaiate and David Garthwaite, Agents for Service
1879 West Lincoln Ave.
Banning, CA 92220
INTERESTED PARTY/ALLEGED PARTIAL OWNER

KSL Media,Inc.
Attn: Ronald R. Camhi, Agent for Service
15760 Ventura Blvd., 5th Floor
Encino, CA 91436
INTERESTED PARTY/ALLEGED PARTIAL OWNER

Coastline Manufacuring
Attn: David Garthwaite, Agent for Service
1879 Lincoln Avenue
Banning, CA 92220
INTERESTED PARTY/ALLEGED PARTIAL OWNER

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 4001-1M.RP**

# EXHIBIT A

LOT 71 OF TRACT NO. 7593, IN THE CITY OF CYPRESS, COUNTY OF ORANGE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 290, PAGES 20, 21 AND 22 OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL COAL, CHEMICALS, PETROLEUM, OIL, GAS, ASPHALTUM AND OTHER
HYDROCARBONS, AND ALL MINERALS, METALS AND MINERAL ORES, WHETHER SIMILAR TO
THOSE HEREIN SPECIFIED OR NOT, OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST
OR HEREINAFTER DISCOVERED UPON, WITHIN OR UNDER LYING SAID LAND, TOGETHER WITH
THE EXCLUSIVE AND PERPETUAL RIGHT OF THE GRANTEE, ITS SUCCESSORS AND ASSIGNS,
OR INGRESS AND EGRESS BENEATH THE SURFACE OF SAID LAND TO EXPLORE FOR,
EXTRACT, MINE AND REMOVE THE SAME AND TO MAKE SUCH USE OF SAID LAND BENEATH
THE SURFACE AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH, WHICH USE MAY
INCLUDE LATERAL OR SLANT DRILLING, DIGGING, BORING OR SINKING OF WELLS,
SHAFTS, TUNNELS OR OTHER METHODS, TOGETHER WITH THE FURTHER EXCLUSIVE AND
PERPETUAL RIGHT OF THE GRANTEE, ITS SUCCESSORS AND ASSIGNS, TO MAKE SUCH USE
OF SAID LAND AS MAY BE NECESSARY TO STORE, KEEP, DEPOSIT AND/OR REMOVE ALL
COAL CHEMICALS, PETROLEUM, OIL, GAS, ASPHALTUM AND OTHER HYDROCARBONS AND ALL
MINERALS, METALS AND MINERAL ORES, WHETHER SIMILAR TO THOSE HEREIN SPECIFIED
OR NOT, OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER
DISCOVERED, PROVIDED, HOWEVER, THAT THE GRANTEE, ITS SUCCESSORS OR ASSIGNS,
SHALL NOT USE THE SURFACE OF SAID LAND ABOVE A FIVE HUNDRED FOOT DEPTH IN THE
EXERCISE OF ANY OF SAID RIGHTS, AS GRANTED TO CONSOLIDATED PACIFIC INVESTMENT
BY DEED RECORDED JANUARY 29, 1959 IN BOOK 4567, PAGE 496, OFFICIAL RECORDS

EXHIBIT 1

001

Γ COPY

Recording Requested by:

WHEN RECORDED MAIL TO

JAY HONG

6393 ANGUILLA AVENUE
CYPRESS, CA 90630

Recorded In Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

|| 12.00

* $ R 0 0 0 7 2 0 3 1 1 8 S *

2015000001757 11:41 am 01/05/15
227 413 G02 F13   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE RESERVED FOR RECORDERS USE

## TITLE (S)

GRANT DEED

EXHIBIT 2

Jay   Hong - OC

002

RECORDING REQUESTED BY;
AND WHEN RECORDED MAIL TO:

JAY HONG
6393 ANGUILLA AVENUE
CYPRESS, CA 90630

THIS SPACE FOR RECORDER'S USE ONLY:

## GRANT DEED

A.P.# 224-102-17

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $ NONE and is
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] unincorporated area; [X] City of      Cypress      ,and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

    Jay Hong, A Married Man as his Sole and Separate Property

hereby GRANT(s) to

    PAX America Development; Pac Bay Window; KSL Media; Coastline Manufacturing; Unimae

the following described property in the          City of Cypress County of Orange          , State of California, described as:
    LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT A AND MADE A PART HEREOF EXHIBIT "A"

          This is a bona fide gift and the grantor received nothing in return, R&T 11911

DATE          9/22/2014
STATE OF CALIFORNIA
COUNTY OF   Los Angeles
On          September 22, 2014
before me,   James Bae
a Notary Public in and for said State, personally appeared
    Jay Hong

_____
Jay Hong

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State
of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____

Name (Typed or Printed)                    (This area for official notarial seal)

JAMES BAE
Commission # 1983025
Notary Public - California
Los Angeles County
My Comm. Expires Jun 23, 2016

**Mail Tax Statements to Return Address Above**

003

RECORDED AT THE REQUEST OF
CHICAGO TITLE COMPANY

**This Document was electronically recorded by
Chicago Title Insurance Co**

Recording Requested By:
PROFESSIONAL MORTGAGE CORP.

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||| 51.00
**2004000397260 10:52am 05/06/04**
113 45 D11 16
0.00 0.00 0.00 0.00 45.00 0.00 0.00 0.00

91748

[Space Above This Line For Recording Data] ——————————

# DEED OF TRUST

**MIN:**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**  "Security Instrument" means this document, which is dated  APRIL 29, 2004                      , together with all Riders to this document.
**(B)**  "Borrower" is JAY HONG, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
**(C)**  "Lender" is PROFESSIONAL MORTGAGE CORP.

Lender is a CALIFORNIA CORPORATION                                                    organized
and existing under the laws of  CALIFORNIA
Lender's address is 17800 CASTLETON ST., #488, CITY OF INDUSTRY, CALIFORNIA 91748

**(D)**  "Trustee" is CHICAGO TITLE COMPANY
16969 VON KARMAN, IRVINE, CALIFORNIA 92606

**(E)**  "MERS" is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)**  "Note" means the promissory note signed by Borrower and dated  APRIL 29, 2004          .
The Note states that Borrower owes Lender  FOUR HUNDRED EIGHTY-EIGHT THOUSAND AND 00/100                                    Dollars (U.S. $ 488,000.00          ) plus interest.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                              Page 1 of 14

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

Cs3005.mzd.1.tem

EXHIBIT 3

004

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 1, 2034                    .

(G)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider             ☐ Planned Unit Development Rider    ☐ Other(s) [specify]
☐ 1-4 Family Rider          ☐ Biweekly Payment Rider

(J)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "**Escrow Items**" means those items that are described in Section 3.

(N)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
                    COUNTY of                    ORANGE                    :
            [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                              Page 2 of 14                    DocMagic *eForms* 800-649-1362
                                                                            www.docmagic.com

Ca3005.mzd.2.tem

005

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 224-102-17

which currently has the address of  6393 ANGUILLA AVENUE

[Street]

CYPRESS                      , California    90630              ("Property Address"):

[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic eFormns  800-849-1362
Form 3005 01/01                              Page 3 of 14                              www.docmagic.com

Ca3005.mzd.3.tem

006

until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 4 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

Ca3005.mzd.4.tem

007

such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an

---

Cx3005.mzd.5.tem

008

additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   8.  **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                   Page 6 of 14

DocMagic eFarms  800-549-1362
www.docmagic.com

Cx3005.mzd.6.tem

009

materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                              Page 7 of 14                         DocMagic *eForms* 800-649-1362
                                                                                  www.docmagic.com

Ca3005.mzd.7.tem

010

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                      Page 8 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

Ca3005.mzd.8.tem

011

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 9 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cs3005.mzd.9.tem

012

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will

---

Cs3005.mzd.10.tem

**013**

state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 11 of 14

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

Cs3005.mzd.11.tem

014

payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 12 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cs3005.mzd.12.tem

015

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
JAY HONG                 -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                -Borrower


Witness:                                 Witness:


_____                  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 13 of 14

DocMagic eForms  800-649-1362
www.docmagic.com

Ca3005.mzd.13.tem

016

State of California                          )
                                             ) ss.
County of  ORANGE                            )

On  April 30, 2004  before me,  Rhondolyn Hammond

personally appeared  JAY HONG

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
                NOTARY SIGNATURE

_____
        (Typed Name of Notary)

NOTARY SEAL

RHONDOLYN HAMMOND
COMM. # 1473503
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. MARCH 2, 2008

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                      Page 14 of 14                DocMagic eForms  800-649-1362
                                                                                  www.docmagic.com

Ca3005.mzd.14.tem

017

MIN:               **NOTE**     Loan Number:

APRIL 29, 2004          CITY OF INDUSTRY       CALIFORNIA
[Date]                   [City]                     [State]

6393 ANGUILLA AVENUE, CYPRESS, CALIFORNIA 90630
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 488,000.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is PROFESSIONAL MORTGAGE CORP., A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.125 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on JUNE 1         , 2004 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2034         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 17800 CASTLETON ST., #488, CITY OF INDUSTRY, CALIFORNIA 91748
                                     or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,965.14     .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01            Page 1 of 3

DocMagic *eForms* 800-649-1362
*www.docmagic.com*

Us3200.not.1.tem


EXHIBIT 4

018

 

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  **Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                                    Page 2 of 3

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

Us3200.not.2.tem

019



the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JAY CHONG                        -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

*WITHOUT RECOURSE, PAY TO THE ORDER OF*

*BY: PROFESSIONAL MORTGAGE CORP,*
*A CALIFORNIA CORPORATION*
*SALLY IM*
*Asst. Vice.*

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                      Page 3 of 3

DocMagic *eForms*  800-649-1362
www.docmagic.com

Us3200.not.3.tem

PAY TO THE ORDER OF

COUNTRYWIDE HOME LOANS INC.

WITHOUT RECOURSE

COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA

BY _____
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

WITHOUT RECOURSE, PAY TO THE ORDER OF

COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF TREASURY BANK, N.A.

BY: PROFESSIONAL MORTGAGE CORP.
A CALIFORNIA CORPORATION
SALLY IM
Asst. Vice President

**LANDSAFE TITLE**

RECORDING REQUESTED BY:

RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT**

**AND TAX STATEMENTS TO:**

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063

TS No.

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

**9.00**

**2011000094260 08:00am 02/22/11**

6S 404 A32 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

*Recording Requested By: DPS On Behalf Of*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/~~MORTGAGE~~

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CHL MORTGAGE PASS-THROUGH TRUST 2004-13, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2004-13**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 04/29/2004, EXECUTED BY: JAY HONG, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY,TRUSTOR: TO CHICAGO TITLE COMPANY, TRUSTEE AND RECORDED AS INSTRUMENT NO. 2004000397260 ON 05/06/2004, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF ORANGE  COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED:  ~~June 05, 2009~~                            **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

FEB 1 7 2011

State of:  _____California_____  )
County of:  _____Ventura_____  )      BY: _____  2/17/2011
                                                        Kevin Rudolph, Assistant Secretary
On  FEB 1 7 2011  before me,  AHMAD AFZAL _____, notary public, personally appeared
       Kevin Rudolph                    _____, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature  _____  (Seal)
       AHMAD AFZAL

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

*Form asgnmnt (01/09)*

Description: Orange,CA Document-Year.DocID 2011.94260 Page: 1 of 1
Order:

EXHIBIT 5

022

## APPRAISAL OF



### LOCATED AT:

6393 ANGUILLA AVE
CYPRESS, CA 90630-5305

### FOR:

Residential Credit Solutions, Inc.
4708 Mercantile Drive
Fort Worth TX 76137

### BORROWER:

HONG, JAY

### AS OF:

December 13, 2014

### BY:

Elfego R Munoz

## Exterior-Only Inspection Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | |
|---|---|---|
| Property Address 6393 ANGUILLA AVE | City CYPRESS | State CA    Zip Code 90630-5305 |
| Borrower HONG, JAY | Owner of Public Record HONG, JAY /TAE CHANG INC | County Orange |

Legal Description N-TRACT: 7593 BLOCK: LOT: 71

Assessor's Parcel # 224-102-17      Tax Year 2013      R.E. Taxes $ 6,580

Neighborhood Name CYPRESS      Map Reference 797/F3      Census Tract 1100.11

Occupant [X] Owner ☐ Tenant ☐ Vacant      Special Assessments $ 0      ☐ PUD    HOA $ 0      ☐ per year ☐ per month

Property Rights Appraised [X] Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction [X] Other (describe) Market Value

Lender/Client Residential Credit Solutions, Inc.      Address 4708 Mercantile Drive, Fort Worth TX 76137

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes [X] No

Report data source(s) used, offering price(s), and date(s). The appraiser was not able to find any listings within the past 12 months. Appraiser searched Tempo MLS and MLS Alliance.

**CONTRACT**

I ☐ did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $      Date of Contract      Is the property seller the owner of public record? ☐ Yes ☐ No    Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location [X] Urban ☐ Suburban ☐ Rural | Property Values [X] Increasing ☐ Stable ☐ Declining | PRICE    AGE | One-Unit 75 % |
| Built-Up [X] Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage [X] In Balance ☐ Over Supply | $(000)    (yrs) | 2-4 Unit 10 % |
| Growth ☐ Rapid [X] Stable ☐ Slow | Marketing Time [X] Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | 438 Low    1 | Multi-Family 5 % |
| Neighborhood Boundaries BOUNDED BY:Katella Ave to the North, Knott St to the East, Chapman | | 695 High    80 | Commercial 10 % |
| Ave to the South and Valley View St to the West. | | 567 Pred.    40 | Other 0 % |

Neighborhood Description Subject's neighborhood consists of mostly single story single family homes built in 1970's. There are some evidence of new improvements and room additions throughout the neighborhood. All supporting facilities, schools and employments are located within 1-4 miles radius from subject.

Market Conditions (including support for the above conclusions) Please See Addendum

**SITE**

Dimensions Please see Plat Map      Area 5227 sf      Shape Rectangle      View N;Res;

Specific Zoning Classification R1      Zoning Description Single Family Residence

Zoning Compliance [X] Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes ☐ No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes [X] No    FEMA Flood Zone X    FEMA Map # 060217/06059C/0117 J    FEMA Map Date 12/03/2009

Are the utilities and off-site improvements typical for the market area? [X] Yes ☐ No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes [X] No  If Yes, describe. No external obsolescence was observed. No hazardous wastes, toxic substances were visible in the improvements, on site, or in the immediate vicinity of the subject property. Appraiser is not an expert in hazardous or toxic substances, thus makes no assertions.

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files [X] MLS ☐ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner [X] Other (describe) Exterior Inspection      Data Source(s) for Gross Living Area NDC Data/Realist

**IMPROVEMENTS**

| GENERAL DESCRIPTION | GENERAL DESCRIPTION | Heating / Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units [X] One ☐ One with Accessory Unit | [X] Concrete Slab ☐ Crawl Space | [X] FWA ☐ HWBB | Fireplace(s) # 1 | ☐ None |
| # of Stories 1 | ☐ Full Basement ☐ Finished | ☐ Radiant | WoodStove(s) # 0 | [X] Driveway  # of Cars 2 |
| Type [X] Det. ☐ Att. ☐ S-Det/End Unit | ☐ Partial Basement ☐ Finished | ☐ Other | [X] Patio/Deck Slab | Driveway Surface concrete |
| [X] Existing ☐ Proposed ☐ Under Const. | Exterior Walls Stucco/Avg | Fuel Gas | [X] Porch Slab | [X] Garage  # of Cars 2 |
| Design (Style) Contemporary | Roof Surface Cmp Shingle/Avg | ☐ Central Air Conditioning | Pool None | ☐ Carport  # of Cars 0 |
| Year Built 1972 | Gutters & Downspouts Alum/Avg | ☐ Individual | Fence None | [X] Att. ☐ Det. |
| Effective Age (Yrs) 30 | Window Type Sliding/Avg | [X] Other None | Other None | ☐ Built-in |

Appliances ☐ Refrigerator ☐ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer [X] Other (describe) Exterior Inspection

Finished area above grade contains:    8 Rooms    4 Bedrooms    2.0 Bath(s)    1,792 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) Subjects outbuilding and upgrades are of average condition.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). C4;The subject exterior has been well maintained with no physical repairs to be noted. The improvements are of average quality and in average overall condition.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes [X] No  If Yes, describe. No hazardous wastes, toxic substances were visible in the improvements, on site, or in the immediate vicinity of the subject property. Appraiser is not an expert in hazardous or toxic substances, thus makes no assertions.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes ☐ No  If No, describe. The subject is located in a conforming neighborhood with other single family dwellings similar in living area, quality and condition.

Freddie Mac Form 2055 March 2005      UAD Version 9/2011      Produced using ACI software, 800.234.8727 www.aciweb.com      Fannie Mae Form 2055 March 2005

Page 1 of 6      2055_20UAD 07/22/2014

024

## Exterior-Only Inspection Residential Appraisal Report

There are 7 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 565,000 to $ 674,900.
There are 32 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 438,000 to $ 695,000.

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 6393 ANGUILLA AVE CYPRESS CA 90630-5305 | 11376 Culebra St Cypress, CA 90630 | | 11362 Anegada St Cypress, CA 90630 | | 6438 Sombrero Ave Cypress, CA 90630 | |
| Proximity to Subject | | 0.23 miles SW | | 0.31 miles SW | | 0.14 miles SE | |
| Sale Price | $ | $ 620,000 | | $ 612,000 | | $ 695,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 347.92 sq. ft. | | $ 392.81 sq. ft. | | $ 326.75 sq. ft. | |
| Data Source(s) | | CRMLS#PW14207073;DOM 54 | | CRMLS#PW14140562;DOM 47 | | CRMLS#OC14041576;DOM 96 | |
| Verification Source(s) | | Doc#496641 | | Doc#335430 | | Doc#276717 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | | ArmLth Conv;0 | | ArmLth Conv;0 | | ArmLth VA;0 | |
| Date of Sale/Time | | s11/14;c10/14 | | s08/14;c07/14 | | s07/14;c04/14 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5227 sf | 5227 sf | | 5227 sf | | 5663 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Contemp | DT1;Contemp | | DT1;Contemp | | DT2;Contemp | 0 |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | 0 |
| Actual Age | 42 | 42 | | 40 | 0 | 41 | 0 |
| Condition | C4 | C4 | -15,000 | C4 | 5,000 | C3 | -15,000 |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | 5,000 | Total Bdrms Baths | 5,000 |
| Room Count | 8  4  2.0 | 7  4  2.0 | | 8  3  2.0 | | 7  3  2.1 | 2,500 |
| Gross Living Area | 75  1,792 sq. ft. | 1,782 sq. ft. | 0 | 1,558 sq. ft. | 17,600 | 2,127 sq. ft. | -25,100 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/None | FWA/None | | FWA/CAC | -2,500 | FWA/CAC | -2,500 |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | Patio/Porch | Patio/Porch | | Patio/Porch | | Patio/Porch | |
| Pool/Spa | None | None | | None | | None/Spa | 0 |
| Fireplace | 1 Fireplace | 1 Fireplace | | 1 Fireplace | | 1 Fireplace | |
| Net Adjustment (Total) | | ☐+ ☒- $ | 15,000 | ☒+ ☐- $ | 20,100 | ☐+ ☒- $ | 35,100 |
| Adjusted Sale Price of Comparables | | Net Adj.  -2.4% Gross Adj.  2.4% | 605,000 | Net Adj.  3.3% Gross Adj.  4.1% | 632,100 | Net Adj.  -5.1% Gross Adj.  7.2% | 659,900 |

☒ I did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  NDC Data/Realist
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  NDC Data/Realist
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 09/10/2014 | | | 01/31/2014 |
| Price of Prior Sale/Transfer | $0 | | | $63,000 |
| Data Source(s) | NDC#367491 | NDC Data/Realist | NDC Data/Realist | NDC/GrntDeed/#40920 |
| Effective Date of Data Source(s) | 12/15/2014 | 12/15/2014 | 12/15/2014 | 12/15/2014 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Subject property has transferred title in the past 36 months.
Comparable sales have transferred in the past 12 months.

Summary of Sales Comparison Approach.   see addendum

Indicated Value by Sales Comparison Approach $ 618,000
Indicated Value by:  Sales Comparison Approach $ 618,000     Cost Approach (if developed) $ 620,600     Income Approach (if developed) $
SEE ADDENDUM

This appraisal is made ☒ "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,
☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required
inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:   This report is intended for used by the lender / client only. This report is not intended for any other use.

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 618,000 as of  12/13/2014 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055  March 2005          UAD Version 9/2011          Produced using ACI software, 800 234 8727 www.aciweb.com          Fannie Mae Form 2055  March 2005
Page 2 of 6          2055_05UAD 07222014

025

## Exterior-Only Inspection Residential Appraisal Report

**ADDITIONAL COMMENTS**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    Due to lack of adequate data the opinion of site value is preformed by extraction method. The Cost Approach is given little or no value in the final opinion of value. The appraiser assumes no liability based upon lenders use of the Cost Approach for insurance purposes.

| ESTIMATED | ☐ REPRODUCTION OR | ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | ......................... = $ | 302,000 |
|---|---|---|---|---|---|
| Source of cost data Building-cost.net | | | Dwelling | 1,792 Sq. Ft. @ $ 175......... = $ | 313,600 |
| Quality rating from cost service Average | Effective date of cost data 12/2013 | | | Sq. Ft. @ $ ............. = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | |
| Comments on Cost Approach depreciation is via economic age | | | Garage/Carport 200 | Sq. Ft. @ $ 25............. = $ | 5,000 |
| life method. Total economic life estimated at 80 years. | | | Total Estimate of Cost-New | ............. = $ | 318,600 |
| Replacement cost figures used in the Cost Approach are for | | | Less 50 Physical Functional External | | |
| valuation purposes only. These figures should not be relied upon | | | Depreciation | = $ ( | 0) |
| for insurance purposes. The definition of "Market Value" used in | | | Depreciated Cost of Improvements | ............. = $ | 318,600 |
| this appraisal is not likely to be consistent with the definition of | | | "As-is" Value of Site Improvements | ............. = $ | |
| "Insurable Value". | | | | | |
| Estimated Remaining Economic Life (HUD and VA only) | 20 Years | | INDICATED VALUE BY COST APPROACH | ............. = $ | 620,600 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach $ |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?    ☐ Yes  ☐ No    Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD?  ☐ Yes  ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

026

## Exterior-Only Inspection Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

027

## Exterior-Only Inspection Residential Appraisal Report

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.   I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.   I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.   I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.   I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value.  I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment.  I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.   I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.   I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.   I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.   I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.   I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10.  I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11.  I have knowledge and experience in appraising this type of property in this market area.

12.  I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13.  I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14.  I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value.  I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal.  I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15.  I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16.  I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17.  I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction.  I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18.  My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19.  I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report.  If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report.  I certify that any individual so named is qualified to perform the tasks.  I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20.  I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent.  Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

028

## Exterior-Only Inspection Residential Appraisal Report

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature
Name Elfego R Munoz
Company Name Top Flight Appraisals/Vandalay
Company Address 1308 E Crane Ct
Compton, CA 90221
Telephone Number 805-433-3786
Email Address vandalaygp@gmail.com
Date of Signature and Report 12/15/2014
Effective Date of Appraisal 12/13/2014
State Certification # AR039569
or State License #
or Other (describe) _____ State # _____
State CA
Expiration Date of Certification or License 02/14/2016

ADDRESS OF PROPERTY APPRAISED
6393 ANGUILLA AVE
CYPRESS, CA 90630-5305

APPRAISED VALUE OF SUBJECT PROPERTY $ 618,000

LENDER/CLIENT
Name FA Business Services
Company Name Residential Credit Solutions, Inc.
Company Address 4708 Mercantile Drive
Fort Worth, TX 76137
Email Address None

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature
Name
Company Name
Company Address
Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY
☐ Did not inspect exterior subject property
☐ Did inspect exterior of subject property from street
Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection

Freddie Mac Form 2055 March 2005          UAD Version 9/2011 .          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 2055 March 2005
Page 6 of 6          2055_05UAD 07222014

Top Flight Appraisals

029

## Exterior-Only Inspection Residential Appraisal Report

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| | 6393 ANGUILLA AVE | 11679 Cozumel St | | 6895 Molokai Dr | | 6857 Leilani Ln | |
| Address | CYPRESS CA 90630-5305 | Cypress, CA 90630 | | Cypress, CA 90630 | | Cypress, CA 90630 | |
| Proximity to Subject | | 0.52 miles SW | | 0.60 miles SE | | 0.60 miles SE | |
| Sale Price | $ | | $  600,000 | | $  639,900 | | $  674,900 |
| Sale Price/Gross Liv. Area | $  0.00 sq. ft. | $  371.75 sq. ft. | | $  337.32 sq. ft. | | $  355.77 sq. ft. | |
| Data Source(s) | | CRMLS#PW14084695;DOM 54 | | CRMLS#PW14236034;DOM 40 | | CRMLS#PW14221179;DOM 63 | |
| Verification Source(s) | | Doc#236011 | | No Doc Found | | No Doc Found | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | Listing | -12,798 | Listing | -13,498 |
| Concessions | | Conv;0 | | ;0 | | ;0 | |
| Date of Sale/Time | | s06/14;c05/14 | | Active | | Active | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5227 sf | 6534 sf | 2,614 | 4792 sf | 0 | 4792 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Contemp | DT1;Contemp | | DT2;Contemp | 0 | DT2;Contemp | 0 |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 42 | 41 | 0 | 47 | 0 | 49 | 0 |
| Condition | C4 | C4 | | C3 | -15,000 | C3 | -15,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | -5,000 | Total Bdrms. Baths | -5,000 |
| Room Count | 8  4  2.0 | 7  4  2.0 | | 9  5  2.0 | | 9  5  2.0 | |
| Gross Living Area 75 | 1,792 sq. ft. | 1,614 sq. ft. | 13,400 | 1,897 sq. ft. | -7,900 | 1,897 sq. ft. | -7,900 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/None | FWA/CAC | -2,500 | FWA/None | | FWA/None | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | Patio/Porch | Deck | 0 | Patio/Porch | | Patio/Porch | |
| Pool/Spa | None | Pool | -20,000 | Pool | -20,000 | Pool/Spa | -20,000 |
| Fireplace | 1 Fireplace | 1 Fireplace | | 1 Fireplace | | 1 Fireplace | |
| Net Adjustment (Total) | | ☐ +  ☒ -  $ | 6,486 | ☐ +  ☒ -  $ | 60,698 | ☐ +  ☒ -  $ | 61,398 |
| Adjusted Sale Price | | Net Adj.  -1.1% | | Net Adj.  -9.5% | | Net Adj.  -9.1% | |
| of Comparables | | Gross Adj.  6.4% | 593,514 | Gross Adj.  9.5% | 579,202 | Gross Adj.  9.1% | 613,502 |

| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | COMPARABLE SALE NO. 5 | COMPARABLE SALE NO. 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 09/10/2014 | | | |
| Price of Prior Sale/Transfer | $0 | | | |
| Data Source(s) | NDC/#367491 | NDC Data/Realist | NDC Data/Realist | NDC Data/Realist |
| Effective Date of Data Source(s) | 12/15/2014 | 12/15/2014 | 12/15/2014 | 12/15/2014 |
| Summary of Sales Comparison Approach | | | | |

Freddie Mac Form 2055 March 2005          UAD Version 9/2011          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 2055 March 2005
2055_05UAD 07/22/2014

030

## Uniform Appraisal Dataset Definitions

### Condition Ratings and Definitions

**C1**    The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2**    The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

**C3**    The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been adequately maintained and are not to the level of a complete renovation.*

**C4**    The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

**C5**    The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

**C6**    The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

### Quality Ratings and Definitions

**Q1**    Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**    Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3**    Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**    Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**    Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**    Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

### Definitions of Not Updated, Updated, and Remodeled

**Not Updated**
**Little or no updating or modernization. This description includes, but is not limited to, new homes.**
Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical /functional deterioration.

**Updated**
**The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.**
An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

**Remodeled**
**Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/ or expansion.**
A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following:  replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

The number of full and half baths is reported by separating the two values by a period. The full bath is represented to the left of the period. The half bath count is represented to the right of the period.  Three-quarter baths are to be counted as a full bath in all cases. Quarter baths (baths that feature only toilet) are not to be included in the bathroom count.

## Uniform Appraisal Dataset Definitions

### Abbreviations Used in Data Standardization Text

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---------|-----------|--------------------|---------|-----------|--------------------|
| ac | Acres | Area, Site | in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| AdjPrk | Adjacent to Park | Location | Lndll | Landfill | Location |
| AdjPwr | Adjacent to Power Lines | Location | LtdSght | Limited Sight | View |
| A | Adverse | Location & View | Listing | Listing | Sale or Financing Concessions |
| ArmLth | Arms Length Sale | Sale or Financing Concessions | MR | Mid-Rise Structure | Design(Style) |
| AT | Attached Structure | Design(Style) | Mtn | Mountain View | View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade | N | Neutral | Location & View |
| br | Bedroom | Basement & Finished Rooms Below Grade | NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| B | Beneficial | Location & View | op | Open | Garage/Carport |
| BsyRd | Busy Road | Location | o | Other | Basement & Finished Rooms Below Grade |
| cp | Carport | Garage/Carport | O | Other | Design(Style) |
| Cash | Cash | Sale or Financing Concessions | Prk | Park View | View |
| CtySky | City View Skyline View | View | Pstrl | Pastoral View | View |
| CtyStr | City Street View | View | PwrLn | Power Lines | View |
| Comm | Commercial Influence | Location | PubTrn | Public Transportation | Location |
| c | Contracted Date | Date of Sale/Time | rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Conv | Conventional | Sale or Financing Concessions | Relo | Relocation Sale | Sale or Financing Concessions |
| cv | Covered | Garage/Carport | REO | REO Sale | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions | Res | Residential | Location & View |
| DOM | Days On Market | Data Sources | RT | Row or Townhouse | Design(Style) |
| DT | Detached Structure | Design(Style) | RH | Rural Housing - USDA | Sale or Financing Concessions |
| dw | Driveway | Garage/Carport | SD | Semi-detached Structure | Design(Style) |
| Estate | Estate Sale | Sale or Financing Concessions | s | Settlement Date | Date of Sale/Time |
| e | Expiration Date | Date of Sale/Time | Short | Short Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions | sf | Square Feet | Area, Site, Basement |
| g | Garage | Garage/Carport | sqm | Square Meters | Area, Site, Basement |
| ga | Garage - Attached | Garage/Carport | Unk | Unknown | Date of Sale/Time |
| gbi | Garage - Built-in | Garage/Carport | VA | Veterans Administration | Sale or Financing Concessions |
| gd | Garage - Detached | Garage/Carport | wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| GR | Garden Structure | Design(Style) | wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| GlfCse | Golf Course | Location | WtrFr | Water Frontage | Location |
| Glfvw | Golf Course View | View | Wtr | Water View | View |
| HR | High Rise Structure | Design(Style) | w | Withdrawn Date | Date of Sale/Time |
| Ind | Industrial | Location & View | Woods | Woods View | View |

### Other Appraiser-Defined Abbreviations

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---------|-----------|--------------------|---------|-----------|--------------------|
| | | | | | |

032

ADDENDUM

| Borrower: HONG, JAY | | |
|---|---|---|
| Property Address: 6393 ANGUILLA AVE | | |
| City: CYPRESS | State: CA | Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | | |

**CERTIFICATION SUPPLEMENT:**
1. THIS APPRAISAL ASSIGNMENT WAS NOT BASED ON A REQUESTED MINIMUM VALUATION, A SPECIFIC VALUATION, OR AN APPROVAL OF A LOAN.
2. MY COMPENSATION IS NOT CONTINGENT UPON THE REPORTING OF A PREDETERMINED VALUE OR DIRECTION IN VALUE THAT FAVORS THE CAUSE OF THE CLIENT, THE AMOUNT OF THE VALUE ESTIMATE, THE ATTAINMENT OF A STIPULATED RESULT OR THE OCCURRENCE OF A SUBSEQUENT EVENT.
3. IT IS ASSUMED THAT PERMITS ARE AVAILABLE ON ALL STRUCTURES, INCLUDING PERMANENT FOUNDATIONS, AND IT IS ASSUMED THE AGE GIVEN TO THE APPRAISER EITHER BY THE COUNTY/CITY RECORDS, OR BY THE HOME OWNER IS TRUE AND ACCURATE, IF FOUND NOT TO BE TRUE AND ACCURATE, I RESERVE THE RIGHT TO CHANGE MAY APPRAISAL. SUPERVISORY INSPECTION IS AN EXTERIOR ONLY.
4. DIGITAL SIGNATURE: THIS REPORT HAS BEEN DIGITALLY SIGNED BY THE APPRAISER, IF THERE IS ANY UNAUTHORIZED USE OF THIS REPORT, OR MY SIGNATURE, THIS REPORT WILL NO LONGER BE VALID.

**NEIGHBORHOOD MARKET CONDITIONS:**

THE MARKET CONDITIONS INDICATE THAT PROPERTY VALUES ARE STABLE, PER DQNEWS.COM, LOCAL MLS AND REALTORS FAMILIAR WITH THISAREA, IN PARTICULAR, THE SUBJECT'S IMMEDIATE NEIGHBORHOOD. THE MARKET CONDITIONS IN THIS AREA CAN BE CONSIDERED GOOD. THE FINANCING IS PREDOMINANTLY CONVENTIONAL WITH FEW CONCESSIONS. MARKETING TIME IS ESTIMATED TO BE 3 TO 6 MONTHS WITH SUPPLYRELATIVELY IN BALANCE WITH DEMAND. THE AREA TREND IS TOWARDS REMODELING OF HOUSES AND IMPROVEMENT OF EXISTING ONES.

**EXTERNAL OBSOLESCENCE:** ALSO KNOWN AS ECONOMIC OBSOLESCENCE MEANS LOSS OF VALUE FROM ALL CAUSES OUTSIDE THE PROPERTY ITSELF.
**EXTERNAL OBSOLESCENCE:** NO

**DEFINITION OF EXTRAORDINARY ASSUMPTION:** AN ASSUMPTION TO WITHIN AN APPRAISAL THAT IS ESSENTIAL THAT THE VALUE OPINION WOULD BE ERRONEOUS IF THE ASSUMPTION PROVED TO BE FALSE.
**EXTRAORDINARY ASSUMPTIONS:** YES
APPRAISER IS USING EXTRAORDINARY ASSUMPTION ON SUBJECTS CONDITION AS A C4.

 IT IS ASSUMED THAT ALL STRUCTURES, GIVEN VALUE IN THIS REPORT ARE LEGALLY PERMITTED AS STATED. THE LAND IS ASSUMED TO HAVE NO UNKNOWN GEOLOGICAL OR ENVIRONMENTAL ADVERSE ISSUES. THE PHYSICAL CHARACTERISTICS OF THE COMPARABLES WERE EITHER VERIFIED THROUGH COUNTY RECORDS, MULTIPLE LISTING SERVICE, AND OR HOME OWNER VERIFICATION, ASSUMED TO BE AS STATED.  DUE TO BEING MARKET DRIVEN, THE COST APPROACH FIGURES ARE ASSUMED TO BE AS STATED. THE CURRENT ZONING AND FLOOD MAP INFORMATION IS ASSUMED TO BE AS STATED IN THIS REPORT. THE TYPE AND CONDITION OF THE UTILITIES, ROOF, FOUNDATION, WINDOWS, APPLIANCES, HEATING AND A/C SYSTEMS, FLOORING, PLUMBING AND ELECTRICAL, TYPE OF WALLS, INSULATION, IS ALL ASSUMED TO BE STATED, ALL IN GOOD WORKING ORDER. THE LEGAL AGE OF THE HOME IS ASSUMED TO BE AS STATED. THE TYPE AND CONDITION OF UTILITIES IS ASSUMED TO BE AS STATED. THE ESTIMATED THE TYPE OF FOUNDATION IS ASSUMED TO BE AS STATED. IF ANY OF THESE ITEMS ARE FOUND TO BE NOT TRUE OR CORRECT, I RESERVE THE RIGHT TO CHANGE MY REPORT.

**DEFINITION OF HYPOTHETICAL CONDITIONS:** A CONDITION CONTRARY OF FACT. AN APPRAISAL MAY BE BASED ON ASSUMPTION THAT DIFFERS FROM EXISTING CONDITIONS.
**HYPOTHETICAL CONDITIONS:** NO

**SITE VALUE EXCEEDS 30%:**
ALTHOUGH THE "OPINION OF SITE VALUE" EXCEEDS THE "INDICATED VALUE" BY MORE THAN 30%, HOWEVER, THE LAND TO VALUE RATIO IS TYPICAL FOR THE AREA, AND HAS BEEN EXTRACTED FROM THE MARKET ANALYSIS.

**INTENDED USER:**
THE INTENDED USER OF THIS APPRAISAL REPORT IS LENDER/CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR MARKET VALUE PURPOSES, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THE APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

**SALES COMPARISON SEARCH CRITERIA:**
THE INITIAL COMPARABLE SALE SEARCH FOCUSED ON SALES, LISTINGS, AND PENDING SALES WITH TRANSACTION DATES WITHIN THE PAST 3 MONTHS, LOCATED WITHIN 1 MILE FROM THE SUBJECT, WITHIN 20% FT. ABOVE GRADE GLA, SIMILAR SITE SIZE, AND SIMILAR AGE WITHIN A 15 YEAR RANGE. THE INITIAL SEARCH RESULTED IN 2 PROPERTIES,

THE SEARCH PARAMETERS WERE THEN EXPANDED TO TRANSACTION DATES WITHIN THE PAST 6 MONTHS, LOCATED WITHIN 1 MILE FROM THE SUBJECT, WITHIN 20% FT. ABOVE GRADE GLA, SIMILAR SITE SIZE, AND SIMILAR AGE WITHIN A 15 YEAR RANGE. USING THE EXPANDED SEARCH PARAMETERS A TOTAL OF 15 PROPERTIES WERE FOUND (WHICH INCLUDES THOSE PROPERTIES FOUND IN THE INITIAL SEARCH), 6 OF WHICH, 4 SALES AND 2 LISTINGS, WERE CONSIDERED MOST COMPARABLE AND INCLUDED IN THE SALES COMPARISON APPROACH.

AFTER FINDING THE CLOSED SALES COMPARABLES ON DATA SOURCE 1 (NDC/REALIST), THE APPRAISER VERIFIES AND GATHERS MORE INFORMATION THROUGH MLS/REALTORS, BASED ON THIS RESULTS THE MOST SIMILAR COMPARABLES FOUND ARE USED FOR THIS APPRAISAL.

033

ADDENDUM

| | |
|---|---|
| Borrower: HONG, JAY | |
| Property Address: 6393 ANGUILLA AVE | |
| City: CYPRESS | State: CA    Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | |

**MLS COMMENT:**
COMPARABLE SALES USED FOR THE PURPOSE OF THIS APPRAISAL WERE VERIFIED THROUGH MLS. SOLD
COMPARABLES WERE LISTED ON MLS AND SOLD TO DIFFERENT PARTIES, EACH OF WHOM ACTS IN HIS OR HER
OWN BEST INTEREST.

**SUBJECTS AND COMPARABLES LISTING AND PENDING ADDENDUM:**
THE APPRAISER'S OPINION OF VALUE IS BASED ON THE MARKET, RESEARCH AND KNOWLEDGE OF THE AREA.
THE LISTING OR PENDING SALES IS CONTRACTED BY REALTORS AND HOMEOWNERS. THE APPRAISER DOES
NOT HAVE OR HAS EVER HAD ANY TYPE OF OPINION OR COMMUNICATION WITH REALTORS OR THE
HOMEOWNER'S PRIOR TO THE APPRAISAL ASSIGNMENT.

**NEIGHBORHOOD BOUNDARIES/CROSSING MAJOR RD ADDENDUM:**
THE APPRAISER RECOGNIZES THAT SOME COMPARABLES MAY BE LOCATED OUTSIDE OF THE NEIGHBORHOOD
BOUNDARIES, OR ACROSS MAJOR STREETS. THIS CROSSING OF THESE MAJOR ROADS WAS NECESSARY DUE
TO THE LACK OF SALES WITHIN THE SUBJECT'S LOCATION. THE USE OF COMPARABLES ACROSS MAJOR ROADS
AND/OR OUTSIDE OF THE SUBJECT'S NEIGHBORHOOD BOUNDARIES DOES NOT HAVE AN IMPACT ON THE
MARKETABILITY OF THE SUBJECT. THE SUBJECT PROPERTY AND COMPARABLES ARE LOCATED IN SIMILAR AND
COMPETING NEIGHBORHOODS, AND HAVE THE SAME LEVEL OF MARKETABILITY AND APPEAL.

**FINAL RECONCILIATION**
THE SALES COMPARISON APPROACH IS GIVEN THE GREATEST WEIGHT DUE TO ADEQUATE SALES DATA IN THE
SUBJECT MARKET AREA. THE COST APPROACH WAS CONSIDERED BUT NOT APPLICABLE DUE TO DIFFICULTY IN
MEASURING ACCRUED DEPRECIATION AND LACK OF LAND SALES. THE INCOME APPROACH IS NOT DEVELOPED
AS THIS IS PRIMARILY AN OWNER OCCUPIED NEIGHBORHOOD. BOTH QUALITY AND QUANTITY OF RENTS AND
GRM'S IS LIMITED FOR THIS REASON.

AFTER REVIEWING AND ANALYZING THE AVAILABE DATA , MOST WEIGHT WAS GIVEN TO COMPARABLES 1 & 2
DUE TO BEING MOST RECENT SIMILAR SALES TO THE SUBJECT PROPERTY AND BOTH ARE CONSIDER TO BE
MORE INDICATIVE TO THE MARKET. COMPARABLE 3 & 4 WERE SECONDARY. COMPARABLES WERE
CONSIDERED IN VALUE ESTIMATES WITH APPRAISER'S OPINION OF VALUE BRACKETED AND PLACED WITH
RANGE OF THE ADJUSTED CLOSED SALES PRICE OF ALL 4 COMPARABLES.

**SUBJECTS LISTING:**
THE APPRAISER DID NOT FIND ANY LISTINGS FOR THE SUBJECT PROPERTY WITHIN THE PAST 12
MONTHS.

**APPRAISER'S COMPETENCY:**
THE SUBJECT PROPERTY IS LOCATED 18 MILES  FROM THE APPRAISER'S OFFICE. THE SUBJECT
PROPERTY IS LOCATED WITHIN THE APPRAISER'S NORMAL COVERAGE AREA. THE APPRAISER HAS
10 YEARS IN TOTAL SERVICING THE SUBJECT'S MARKET AREA WITH RELIABLE MARKET DATA.
APPRAISERS MARKET DATE INCLUDES SOCALMLS, NDCDATA, LOS ANGELES ASSESSORS OFFICE,
REALIST, AND MERCADO MLS.THE APPRAISER AVERAGES 4-8 APPRAISAL ASSIGNMENTS PER MONTH
WITHIN THE SUBJECTS NEIGHBORHOOD. THE TOTAL FIELD WORK EXPERIENCE IS 12 YEARS. THE
APPRAISER RESIDES IN LOS ANGELES COUNTY.

**ADDITIONAL COMMENTS:**
 NO EMPLOYEE, DIRECTOR, OFFICER, OR AGENT OF THE LENDER, OR ANY OTHER THIRD PARTY
ACTING AS A JOINT VENTURE PARTNER, INDEPENDENT CONTRACTOR, APPRAISAL MANAGEMENT
COMPANY, OR PARTNER ON BEHALF OF THE LENDER HAS INFLUENCED OR ATTEMPTED TO
INFLUENCE THE DEVELOPMENT, REPORTING, RESULT, OR REVIEW OF THIS ASSIGNMENT THROUGH
COERCION, EXTORTION, COLLUSION, COMPENSATION, INSTRUCTION, INDUCEMENT, INTIMIDATION,
BRIBERY OR IN ANY OTHER MANNER. I HAVE NOT BEEN CONTACTED BY ANYONE OTHER THAN THE
INTENDED USER (LENDER/CLIENT AS IDENTIFIED ON THE FIRST PAGE OF THE REPORT), BORROWER,
OR DESIGNATED CONTACT TO MAKE AN APPOINTMENT TO ENTER THE PROPERTY. I AGREE TO
IMMEDIATELY REPORT ANY UNAUTHORIZED CONTACTS EITHER PERSONALLY BY PHONE OR
ELECTRONICALLY TO THE LENDER/CLIENT.

**EXPOSURE TIME:**
A REASONABLE EXPOSURE TIME FOR THE SUBJECT'S PROPERTY TYPE AT THE CURRENT MARKET
VALUE WOULD BE 3 MONTHS AS OF THE EFFECTIVE DATE OF THE REPORT. TYPICAL HOLDING
PERIOD IS 5-7 YEARS

**APPRAISER SERVICES WITHIN THE PAST 36 MONTHS:**
I HAVE PERFORMED NO SERVICES, AS AN APPRAISER OR IN ANY OTHER CAPACITY, REGARDING THE
PROPERTY THAT IS THE SUBJECT OF THIS REPORT WITHIN THE THREE YEAR PERIOD IMMEDIATELY
PROCEEDING ACCEPTANCE OF THIS AGREEMENT.

**SCOPE OF WORK:**
THE FOLLOWING IS A SUMMARY OUTLINE OF, BUT IS NOT LIMITED TO, THE AMOUNT AND TYPE OF
INFORMATION RESEARCHED AND THE ANALYSIS APPLIED IN THIS APPRAISAL REPORT; ANALYZE
PERTINENT TITLE INFORMATION AND LEGAL DESCRIPTIONS; ANALYZE THE PERTINENT ECONOMIC
FEATURES OF THE IMMEDIATE NEIGHBORHOOD, AS WELL AS RELATED REAL ESTATE MARKETS AS
THEY MAY IMPACT ON SUBJECT-PROPERTY; RATHER AND ANALYZE ALL PERTINENT MARKET DATA,

034

ADDENDUM

| Borrower: HONG, JAY | | |
| Property Address: 6393 ANGUILLA AVE | | |
| City: CYPRESS | State: CA | Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | | |

WITH PARTICULAR EMPHASIS ON COMPARABLE SALES; CONSIDERATION OF ALL APPLICABLE
VALUATION METHODS AND PROCEDURES; AND PROVIDE A RECONCILIATION OF THE RELEVANCE
AND RELIABILITY OF ALL PERTINENT DATA, IN ORDER TO JUSTIFY THE OPINION OF MARKET VALUE

**COMMENTS ON SALES COMPARISON:**
THE ADJUSTMENTS UTILIZED WERE DETERMINED THROUGH PAIRED SALES ANALYSIS, APPRAISERS
WORKING KNOWLEDGE AND EXPERIENCE. THE ADJUSTMENTS REFLECT THE DIFFERENCE THE
TYPICAL BUYER WOULD PAY FOR THE ADDED AMENITY.

A MARKET AREA WAS SURVEYED FOR RELEVANT MARKET DATA WITHIN SUBJECT THE IMMEDIATE'S
AREA. BASED UPON A PHYSICAL EXTERIOR INSPECTION OF SUBJECT AND THE EXTERIOR
INSPECTION OF THE COMPARABLE, THE SUBJECT AND COMPARABLE APPEAR TO BE IN SIMILAR
CONDITION, HAVE CLOSE OR SIMILAR EFFECTIVE AGES, APPEAL, MARKETABILITY, DESIGN,AND
CHARACTERISTICS. ALL OF THE PRECEDING COMPARABLE SALES ARE LOCATED IN THE SUBJECT'S
GENERAL AREA AND ARE CONSIDERED TO BE THE MOST RELEVANT INDICATORS OF CURRENT
MARKET VALUE FOR THE SUBJECT PROPERTY. ADJUSTMENTS MADE ARE BASED ON CURRENT
MARKET ANALYSIS, AND APPRAISERS KNOWLEDGE OF THE MARKET. THE SOURCES OF MARKET
DATA USED IN THIS ANALYSIS FOR THE SALES COMPARISON APPROACH MAY HAVE INCLUDED
MULTIPLE LISTING SERVICES, DATAQUICK,NATIONAL DATA COLLECTIONS, TITLE COMPANY, REAL
QUEST, FIDELITY PASSPORT AND EXTERIOR INSPECTIONS, AND APPRAISER'S PERSONAL
KNOWLEDGE OF THE AREA.

**COMPARABLE SALES WERE ADJUSTED FOR:**
SALES AND FINANCE: 2% ADJUSTMENT WAS FOR LISTING NEGOTIATIONS.
SITE: $2/ SQFT, IN DIFFERENCE OF 1,000 SQR FT.
GROSS LIVING AREA: $75/SQFT FOR DIFFERENCES EXCEEDING 100 SQUARE FEET
BEDROOM: $5,000
BATH: $5,000 1/2 BATH:$2,500
CENTRAL HEATING AND AC: $5,000 FAU/AC ONLY:$2,500
CONDITION: $15,000

**3 MONTH TIME FRAME:**
COMPARABLES 2, 3 AND 4  EXCEED THE TYPICAL 3-MONTH TIME-FRAME GUIDELINE. DUE TO THE
LACK OF RECENT LOCAL TURNOVER AMONG THESE HOMES, IT WAS NECESSARY TO EXPAND THE
SEARCH.

**CONDITION ADJUSTMENT ADDENDUM:**
APPRAISER DETERMINED CONDITION ADJUSTMENT BY GATHERING MOST RECENT SALES THAT
WERE FULL REMODELS COMPARED TO SALES THAT WERE UPDATED SALES WITHIN THE PAST 12
MONTHS OF EFFECTIVE DATE. APPRAISER FOUND 17 SALES AND DETERMINED A RANGE FROM
$10,000-20,000 RANGE DIFFERENCE BETWEEN REMODELED HOMES TO UPDATED HOMES.
THERFORE, APPRAISER STAYED WITHIN A CONSERVATIVE RANGE OF $15,000 FOR CONDITION
ADJUSTMENTS. DATA SOURCE: MLS

APPRAISER RESERVES THE RIGHT TO AMEND AND/OR REVISE THE REPORT SHOULD FACTUAL
EVIDENCE IN CONTRAST TO THE INFORMATION PROVIDED BE PRESENTED.

035

## Market Conditions Addendum to the Appraisal Report

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| | | | |
|---|---|---|---|
| Property Address 6393 ANGUILLA AVE | City CYPRESS | State CA | Zip Code 90630-5305 |
| Borrower HONG, JAY | | | |

Instructions:  The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 16 | 10 | 6 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Absorption Rate (Total Sales/Months) | 2.67 | 3.33 | 2.00 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Total # of Comparable Active Listings | 2 | 3 | 7 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 0.75 | 0.90 | 3.50 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 562,500 | 592,500 | 567,500 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 40 | 45 | 40 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Comparable List Price | 587,450 | 569,900 | 605,000 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 107 | 71 | 63 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 100.00% | 98.65% | 97.60% | ☐ Increasing | ☐ Stable | ☒ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☒ No | | | | |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).
**The CRMLS MLS indicates there were 32 closed sales during the past 12 months and 7 of those sales contained seller concessions which is 22% of the total transactions in this market area. Prior Months 7-12: 16 Sales; 4 with concessions; 25% of sales for this period. 4-6: 10 Sales; 1 with concessions; 10% of sales for this period. 0-3: 6 Sales; 2 with concessions; 33% of sales for this period. The concessions ranged between 750 and 10,000. The median concession amount is $3,000.**

Are foreclosure sales (REO sales) a factor in the market?  ☒ Yes  ☐ No   If yes, explain (including the trends in listings and sales of foreclosed properties).
**The CRMLS MLS indicates there were 32 closed sales during the past 12 months and 4 of those sales were either foreclosures or short sales which is 12% of the total transactions in this market area. Prior Months 7-12: 16 Sales; 2 foreclosures or short sales; 12% of sales for this period. 4-6: 10 Sales; 1 foreclosures or short sales; 10% of sales for this period. 0-3: 6 Sales; 1 foreclosures or short sales; 17% of sales for this period.**

Cite data sources for above information.  **The CRMLS MLS was the data source used to complete the Market Conditions Addendum.**

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
**Effective Date: Monday, December 15, 2014**

| If the subject is a unit in a condominium or cooperative project, complete the following: | | | Project Name: | | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?  ☐ Yes  ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name Elfego R Munoz | Name |
| Company Name Top Flight Appraisals/Vandalay | Company Name |
| Company Address 1308 E Crane Ct | Company Address |
| Compton, CA 90221 | |
| State License/Certification # AR039569    State CA | State License/Certification #    State |
| Email Address vandalaygp@gmail.com | Email Address |

036

SUBJECT PROPERTY PHOTO ADDENDUM

| | | | |
|---|---|---|---|
| Borrower: HONG, JAY | | | |
| Property Address: 6393 ANGUILLA AVE | | | |
| City: CYPRESS | State: CA | Zip: 90630-5305 | |
| Lender: Residential Credit Solutions, Inc. | | | |



**FRONT VIEW OF SUBJECT PROPERTY**

Appraised Date: December 13, 2014
Appraised Value: $ 618,000



**STREET SCENE**

037

| Borrower: HONG, JAY | | |
| Property Address: 6393 ANGUILLA AVE | | |
| City: CYPRESS | State: CA | Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | | |



Side View



Side View



Street View

| Borrower: HONG, JAY | | |
|---|---|---|
| Property Address: 6393 ANGUILLA AVE | | |
| City: CYPRESS | State: CA | Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | | |



Street Name



COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: HONG, JAY | |
| Property Address: 6393 ANGUILLA AVE | |
| City: CYPRESS | State: CA    Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | |



**COMPARABLE SALE #1**

11376 Culebra St
Cypress, CA 90630
Sale Date: s11/14;c10/14
Sale Price: $ 620,000



**COMPARABLE SALE #2**

11362 Anegada St
Cypress, CA 90630
Sale Date: s08/14;c07/14
Sale Price: $ 612,000



**COMPARABLE SALE #3**

6438 Sombrero Ave
Cypress, CA 90630
Sale Date: s07/14;c04/14
Sale Price: $ 695,000

040

COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: HONG, JAY | File No.: |
| Property Address: 6393 ANGUILLA AVE | Case No.: |
| City: CYPRESS | State: CA | Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | |



**COMPARABLE SALE #4**

11679 Cozumel St
Cypress, CA 90630
Sale Date: s06/14;c05/14
Sale Price: $ 600,000



**COMPARABLE SALE #5**

6895 Molokai Dr
Cypress, CA 90630
Sale Date: Active
Sale Price: $ 639,900



**COMPARABLE SALE #6**

6857 Leilani Ln
Cypress, CA 90630
Sale Date: Active
Sale Price: $ 674,900

041

LOCATION MAP

| Borrower: HONG, JAY | | File No.: | |
| Property Address: 6393 ANGUILLA AVE | | Case No.: | |
| City: CYPRESS | State: CA | Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | | | |



042

AERIAL MAP

| Borrower: HONG, JAY | | File No.: | |
| Property Address: 6393 ANGUILLA AVE | | Case No.: | |
| City: CYPRESS | State: CA | | Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | | | |



043

PLAT MAP

| Borrower: HONG, JAY | | File No.: | |
| Property Address: 6393 ANGUILLA AVE | | Case No.: | |
| City: CYPRESS | State: CA | Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | | | |



044

## USPAP ADDENDUM

| | |
|---|---|
| Borrower: | HONG, JAY |
| Property Address: | 6393 ANGUILLA AVE |
| City: CYPRESS | County: Orange      State: CA      Zip Code: 90630-5305 |
| Lender: | Residential Credit Solutions, Inc. |

### APPRAISAL AND REPORT IDENTIFICATION

This report was prepared under the following USPAP reporting option:

[X] **Appraisal Report**      A written report prepared under Standards Rule 2-2(a).

[ ] **Restricted Appraisal Report**      A written report prepared under Standards Rule 2-2(b).

### Reasonable Exposure Time

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: Under 90 days.

### Additional Certifications

[X] I have performed NO services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

[ ] I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

### Additional Comments

Clarification of Intended Use and Intended User:

The Intended User of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for a market value transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

This form complies with 2014-2015 USPAP Revisions under Standards 2 and 8. The Self-Contained Report & Appraisal Report options were eliminated and replaced with the new standard defining this report as an 'Appraisal Report'. Any references to 'Self-Contained Report (including hard-coded wording built in to the URAR) in the following forms are hereby superceded with this compliance certificate.

| APPRAISER: | SUPERVISORY APPRAISER (only if required) |
|---|---|
| Signature: | Signature: |
| Name: Elfego R Munoz | Name: |
| Date Signed: 12/15/2014 | Date Signed: |
| State Certification #: AR039569 | State Certification #: |
| or State License #: | or State License #: |
| or Other (describe): _____ State #: | State: |
| State: CA | Expiration Date of Certification or License: |
| Expiration Date of Certification or License: 02/14/2016 | Supervisory Appraiser inspection of Subject Property: |
| Effective Date of Appraisal: 12/13/2014 | [ ] Did Not  [ ] Exterior-only from street  [ ] Interior and Exterior |

045

E&O

| | |
|---|---|
| Borrower: HONG, JAY | File No.: |
| Property Address: 6393 ANGUILLA AVE | Case No.: |
| City: CYPRESS | State: CA    Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | |



**GREAT**AMERICAN.
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS
LIABILITY INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED
AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒  Great American Assurance Company

Note:  The Insurance Company selected above shall herein be referred to as the Company.

Policy Number:   RAP3665098-14          Renewal of:

Program Administrator:          Herbert H. Landy Insurance Agency Inc.
                75 Second Ave Suite 410  Needham, MA 02494-2876

Item 1. Named Insured:      Elfego R Munoz

Item 2. Mailing Address:      1308 E CRANE CT
       City, State, Zip Code:     COMPTON, CA 90221

Item 3.  Policy Period:  From    04/24/2014    To    04/24/2015
                (Month, Day, Year)    (Month, Day, Year)
       (Both dates at 12:01 a.m. Standard Time at the address of the Named Insured as stated in Item 2.)

Item 4.  Limits of Liability:

     A.  $ ___1,000,000___  Damages Limit of Liability – Each Claim

     B.  $ ___1,000,000___  Claim Expenses Limit of Liability – Each Claim

     C.  $ ___1,000,000___  Damages Limit of Liability – Policy Aggregate

     D.  $ ___1,000,000___  Claim Expenses Limit of Liability – Policy Aggregate

Item 5.  Deductible (Inclusive of Claim Expenses):

     A.  $ ___500___  Each Claim

     B.  $ ___1,000___  Aggregate

Item 6.  Premium: $      850.00

Item 7.  Retroactive Date (if applicable):      04/24/2009

Item 8.  Forms, Notices and Endorsements attached:
          D42100 (05/13)  D42300 CA (10 13)
          D42402 (05/13)  D42403 (05/13)  D42408 (05/13)

046

| Borrower: HONG, JAY | | File No.: | |
| Property Address: 6393 ANGUILLA AVE | | Case No.: | |
| City: CYPRESS | State: CA | Zip: 90630-5305 |
| Lender: Residential Credit Solutions, Inc. | | | |

Business, Consumer Services & Housing Agency
BUREAU OF REAL ESTATE APPRAISERS
REAL ESTATE APPRAISER LICENSE

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title

"Certified Residential Real Estate Appraiser"

Ellego R. Munoz

This license has been issued in accordance with the provisions of the Real Estate Appraisers Licensing and Certification Law.

BREA APPRAISER IDENTIFICATION NUMBER:   AR 039569

Effective Date:     January 8, 2014
Date Expires:       February 14, 2016

Jim Martin, Bureau Chief, BREA

047







Subject Front View                    Title                    Subject Street Scene







Extra Photo 1                    Extra Photo 2                    Extra Photo 3





Extra Photo 1                    Extra Photo 2                    Extra Photo 3

Extra Photo 1                    Extra Photo 2                    Extra Photo 3

Extra Photo 1                    Extra Photo 2                    Extra Photo 3

Extra Photo 1                    Extra Photo 2                    Extra Photo 3

048

Extra Photo 1                    Extra Photo 2                    Extra Photo 3

Extra Photo 1                    Extra Photo 2                    Extra Photo 3

Extra Photo 1                    Extra Photo 2                    Extra Photo 3

Extra Photo 1                    Extra Photo 2                    Extra Photo 3



Sales Comp. 1


Sales Comp. 2


Sales Comp. 3


Sales Comp. 4


Sales Comp. 5


Sales Comp. 6

049

Sales Comp. 7          Sales Comp. 8          Sales Comp. 9



Location Map            Aerial Map            Extra Image

Plat Map               Extra Image           License Image

050

Rating:   Pass

Review Master: UAD Validation

***Instructional – Items to be addressed for full compliance.***

- UAD Validation Rules successfully processed.

051

**FILED**

MAY 1 4 2014

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

**ENTERED**

MAY 1 4 2014

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

In re:                                          )     Case No:  2:14-12889-SK
                                                )
    Chul Hyun Gong                        )     Chapter:              7
                                                )
                                                )     **ORDER DISMISSING CASE**
                                                )
                            Debtor(s).      )
_____)

    Having given notice to the Debtor(s) by Case Commencement Deficiency Notice (the "Notice") that the above referenced case may be dismissed if certain deficiencies described in the Notice were not cured within 14 days from the filing of the petition, and having taken judicial notice that the Notice was duly served on the Debtor(s), that the deficiencies have not been cured, and that Debtor(s) has not sought an extension of time within which to cure such deficiencies, it is

    ORDERED  that the above referenced case is dismissed.

DATED: 5/14/14

                                           Sandra R. Klein
                             United States Bankruptcy Judge

# EXHIBIT 7

052

**NOTE TO USERS OF THIS FORM:**

**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)** Category I. below:  The United States trustee and case trustee (if any) will always be in this category.
**4)** Category II. below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief.  <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*   <u>ORDER DISMISSING CASE</u>
was entered on the date indicated as ΑEntered@ on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (ΑNEF@)** Β Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of <u>5/14/2014</u>
the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Leslie M Klott    bankruptcy@zievelaw.com, lklott@zievelaw.com
- David Marh    marhlaw@yahoo.com
- Elissa Miller (TR)    CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

```
Chul Hyun Gong
2342 Mountain Ave.
La Crescenta, Ca 91214
```

☐ **Service** **information continued on attached page**

**III.  TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an Entered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an Entered@ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

RECORDING REQUESTED BY:
AND WHEN RECORDED MAIL TO:

PAX AMERICA DEVELOPMENT, LLC.
137 N LARCHMONT BLVD #607
LOS ANGELES, CA 90004

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

9.00

2012000496725 8:34 am 08/28/12
63 415 G02    2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

THIS SPACE FOR RECORDER'S USE ONLY:

## GRANT DEED

✳ A.P.# 224-102-17 ✳

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $ NONE and is
[X]  computed on full value of property conveyed, or
[ ]  computed on full value less value of liens or encumbrances remaining at time of sale,
[ ]  unincorporated area; [ X ] City of          Cypress          , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**1421 WESTERN AVE,  INC.**

hereby GRANT(s) to

**PAX AMERICA DEVELOPMENT, LLC.; YOUNG OK HONG; UNIMAE**

the following described property in the          City of Cypress County of Orange          , State of California, described as:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT A AND MADE A PART HEREOF EXHIBIT "A"

✳  This is a bona fide gift and the grantor received nothing in return, R&T 11911 ✳

DATE        8/24/2012
STATE OF CALIFORNIA
COUNTY OF LOS ANGELES
On          August 24, 2012
before me,          James Bae
a Notary Public in and for said State, personally appeared
          Thomas Kim

1421 WESTERN AVE, INC.

THOMAS KIM, DIRECTOR

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) (s)are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State
of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature

Name (Typed or Printed)                          (This area for official notarial seal)

JAMES BAE
Commission # 1983025
Notary Public - California
Los Angeles County
My Comm. Expires Jun 23, 2016

EXHIBIT 8

Form CACB (odcnf-VAN162)
(06/2014)

# United States Bankruptcy Court
## Central District Of California

### 411 West Fourth Street, Suite 2030, Santa Ana, CA 92701-4593

## ORDER AND NOTICE OF DISMISSAL
## FOR FAILURE TO FILE INITIAL PETITION DOCUMENTS

**DEBTOR INFORMATION:**  
Young Ok Hong

**BANKRUPTCY NO.**  8:15-bk-10058-CB

**CHAPTER**  7

**Last four digits of Social-Security or Individual Taxpayer-Identification (ITIN) No(s)., (if any):**  xxx-xx-7240  
**Employer Tax-Identification (EIN) No(s).(if any):**  N/A  
**Debtor Dismissal Date:** 1/29/15

**Address:**  
6393 Anguilla Ave  
Cypress, CA 90630

It appearing that a voluntary petition was filed in the above-captioned case without all the documents, signatures, or information required by FRBP 1007 and LBRs 1002-1 and 1007-1(a) to be filed or submitted at the time of the filing of a voluntary petition,

IT IS HEREBY ORDERED THAT:

(1)  The case is dismissed.  
(2)  The automatic stay is vacated.  
(3)  Any discharge entered in this case is vacated.  
(4)  The Court retains jurisdiction on all issues arising under Bankruptcy Code §110, 329 and 362.

FOR THE COURT,

Dated: January 29, 2015

**Catherine E. Bauer**  
United States Bankruptcy Judge

(Form odcnf-VAN162) (Rev. 06/2014)

**13 / BEE**

# EXHIBIT 9

055

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

9.00

*$R00048042835$*

2012000272992 9:21 am 05/14/12
232 415 G02   2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
AND WHEN RECORDED MAIL TO:

PAX AMERICA DEVELOPMENT, LLC
137 N LARCHMONT BLVD #607
LOS ANGELES, CA 90004

THIS SPACE FOR RECORDER'S USE ONLY:

## GRANT DEED

A.P.# 224-102-17

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $ NONE and is
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale,
[ ] unincorporated area;  [ ] City of Cypress , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

    **JAY HONG, A Married Man as His Sole and Separate Property**

hereby GRANT(s) to

    **JAY HONG; PAX AMERICA DEVELOPMENT, LLC; 1421 WESTERN AVE, INC.**

the following described property in the   City of Cypress County of Orange    , State of California, described as:
    LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF EXHIBIT "A"

      **This is a bona fide gift and the grantor received nothing in return, R&T 11911**

DATE    5/8/2012
STATE OF CALIFORNIA
COUNTY OF LOS ANGELES
On    May 9, 2012
before me,    Janis Kim
a Notary Public in and for said State, personally appeared
    Jay Hong

JAY HONG

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State
of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature

Name (Typed or Printed)

JANIS KIM
COMM. #1802668
Notary Public - California
Los Angeles County
My Comm. Expires Jun. 20, 2012

(This area for official notarial seal)

EXHIBIT 10

056



**Bankruptcy Party Search**
Wed Mar 11 13:56:57 2015
12 records found

User:  wf0265new
Client:
Search:  Bankruptcy Party Search Name Pax America Development All Courts Page: 1

| | Party Name ▼ | Court | Case | Ch | Date Filed | Date Closed | Disposition |
|---|---|---|---|---|---|---|---|
| 1 | PAX America Development (db) | cacbke | 2:13-bk-13280 | 7 | 02/08/2013 | 04/30/2013 | Dismissed for Other Reason 04/08/2013 |
| 2 | Pax America Development (db) | cacbke | 2:14-bk-23028 | 7 | 07/08/2014 | 02/10/2015 | Dismissed for Other Reason 09/22/2014 |
| 3 | Pax America Development (db) | cacbke | 2:13-bk-26527 | 7 | 06/26/2013 | 09/17/2013 | Dismissed for Other Reason 08/23/2013 |
| 4 | PAX AMERICA DEVELOPMENT, LLC. (db) | cacbke | 2:10-bk-62980 | 7 | 12/12/2010 | 03/21/2014 | Discharge Not Applicable |
| 5 | Pax America Development (db) | cacbke | 2:14-bk-28152 | 7 | 09/24/2014 | | Dismissed for Other Reason 11/25/2014 |
| 6 | PAX America Development (db) | cacbke | 2:13-bk-31459 | 7 | 08/27/2013 | 11/22/2013 | Dismissed for Other Reason 10/24/2013 |
| 7 | Pax America Development (db) | cacbke | 2:14-bk-32741 | 7 | 12/09/2014 | | Dismissed for Other Reason 02/20/2015 |
| 8 | Pax America Development (db) | cacbke | 2:14-bk-11276 | 7 | 01/23/2014 | 05/05/2014 | Dismissed for Failure to File Information 03/28/2014 |
| 9 | Pax America Development (db) | cacbke | 2:15-bk-12452 | 7 | 02/18/2015 | | |
| 10 | Pax America Development (db) | cacbke | 2:14-bk-17883 | 7 | 04/24/2014 | 09/18/2014 | Dismissed for Other Reason 06/30/2014 |
| 11 | Pax America Development (db) | cacbke | 2:13-bk-19447 | 7 | 04/11/2013 | 07/31/2013 | Dismissed for Other Reason 06/21/2013 |
| 12 | Pax America Development (db) | cacbke | 2:13-bk-36691 | 7 | 11/05/2013 | 03/24/2014 | Dismissed for Other Reason 01/08/2014 |

Receipt 03/11/2015 13:56:57 151562111

User wf0265new
Client
Description  Bankruptcy Party Search
Name Pax America Development All Courts Page: 1
Pages 1 ($0.10)

# EXHIBIT 11

057



**PACER**
Case Locator

Bankruptcy Party Search
Wed Mar 11 13:58:16 2015
18 records found

User: wf0265new
Client:
Search: Bankruptcy Party Search Name Unimae All Courts Page: 1

| | Party Name ▼ | Court | Case | Ch | Date Filed | Date Closed | Disposition |
|---|---|---|---|---|---|---|---|
| 1 | Unimae Inc (ptcrd) | cacbke | 2:09-bk-32057 | 7 | 08/19/2009 | 11/23/2010 | Dismissed for Other Reason 09/10/2009 |
| 2 | UNIMAE (dft) | cacbke | 2:06-ap-01862 | | 08/10/2006 | 04/01/2009 | Judgment Entered by Default |
| 3 | Unimae Inc (ptcrd) | cacbke | 1:09-bk-21251 | 7 | 08/28/2009 | 03/12/2010 | Dismissed for Other Reason 12/22/2009 |
| 4 | Unimae (db) | cacbke | 2:13-bk-32159 | 7 | 09/04/2013 | 02/12/2014 | Dismissed for Other Reason 01/15/2014 |
| 5 | Unimae (db) | cacbke | 2:13-bk-25141 | 7 | 06/10/2013 | 10/17/2013 | Dismissed for Other Reason 08/23/2013 |
| 6 | Unimae (db) | cacbke | 2:14-bk-16037 | 7 | 03/31/2014 | 06/13/2014 | Dismissed for Other Reason 05/30/2014 |
| 7 | Unimae (db) | cacbke | 2:14-bk-25456 | 7 | 08/12/2014 | | Dismissed for Other Reason 10/22/2014 |
| 8 | Unimae (db) | cacbke | 2:09-bk-29921 | 7 | 07/31/2009 | 10/09/2009 | Dismissed for Other Reason 09/30/2009 |
| 9 | UNIMAE (cd) | cacbke | 2:06-ap-01862 | | 08/10/2006 | 04/01/2009 | Judgment Entered by Default |
| 10 | Unimae (db) | cacbke | 2:12-bk-29051 | 7 | 05/31/2012 | 10/30/2012 | Dismissed for Other Reason 08/06/2012 |
| 11 | Unimae (db) | cacbke | 2:12-bk-37712 | 7 | 08/14/2012 | 12/17/2012 | Dismissed for Other Reason 10/11/2012 |
| 12 | Unimae (cr) | cacbke | 1:07-bk-11974 | 7 | 06/13/2007 | 11/24/2010 | Discharge Not Applicable |
| 13 | Unimae (db) | cacbke | 2:13-bk-18184 | 7 | 03/29/2013 | 06/20/2013 | Dismissed for Other Reason 05/24/2013 |
| 14 | Unimae (db) | cacbke | 2:12-bk-44601 | 7 | 10/15/2012 | 04/11/2013 | Dismissed for Other Reason 01/24/2013 |
| 15 | Unimae (db) | cacbke | 2:13-bk-36993 | 7 | 11/08/2013 | 04/01/2014 | Dismissed for Other Reason 03/26/2014 |
| 16 | Unimae (db) | cacbke | 2:13-bk-13130 | 7 | 02/06/2013 | 03/06/2014 | Dismissed for Other Reason 02/04/2014 |
| 17 | UNIMAE (cd) | cacbke | 2:06-ap-01862 | | 08/10/2006 | 04/01/2009 | Judgment Entered by Default |
| 18 | Unimae (db) | cacbke | 2:14-bk-21316 | 7 | 06/10/2014 | | |

| | Receipt 03/11/2015 13:58:17 151562970 |
|---|---|
| User wf0265new | |
| Client | |
| Description Bankruptcy Party Search | |
| Name Unimae All Courts Page: 1 | |
| Pages 1 ($0.10) | |

058



**PACER**
Case Locator

Bankruptcy Party Search
Wed Mar 11 13:58:03 2015
1 record found

**User:** wf0265new
**Client:**
**Search:** Bankruptcy Party Search Name Coastline Manufacturing All Courts Page: 1

| Party Name ▼ | Court | Case | Ch | Date Filed | Date Closed | Disposition |
|---|---|---|---|---|---|---|
| 1  Coastline Manufacturing LLC (db) | cacbke | 6:09-bk-28324 | 7 | 08/11/2009 | 01/29/2015 | Discharge Not Applicable |

Receipt 03/11/2015 13:58:04 151562850
**User** wf0265new
**Client**
**Description** Bankruptcy Party Search
Name Coastline Manufacturing All Courts Page: 1
**Pages** 1 ($0.10)

**059**



**PACER**
Case Locator

Bankruptcy Party Search
Wed Mar 11 13:57:29 2015
2 records found

| | |
|---|---|
| **User:** | wf0265new |
| **Client:** | |
| **Search:** | Bankruptcy Party Search Name Pac Bay Window All Courts Page: 1 |

| Party Name ▼ | Court | Case | Ch | Date Filed | Date Closed | Disposition |
|---|---|---|---|---|---|---|
| 1 Pac Bay Window LLC (db) | cacbke | 6:09-bk-28328 | 7 | 08/11/2009 | 01/29/2015 | Discharge Not Applicable |
| 2 Pac Bay Window LLC (intp) | cacbke | 6:09-bk-28324 | 7 | 08/11/2009 | 01/29/2015 | Discharge Not Applicable |

Receipt 03/11/2015 13:57:30 151562513

| | |
|---|---|
| **User** | wf0265new |
| **Client** | |
| **Description** | Bankruptcy Party Search |
| | Name Pac Bay Window All Courts Page: 1 |
| **Pages** | 1 ($0.10) |

060



**PACER**
Case Locator

**Bankruptcy Party Search**
Wed Mar 11 13:57:45 2015
2 records found

User:   wf0265new
Client:
Search:   Bankruptcy Party Search Name KSL Media All Courts Page: 1

| Party Name ▼ | Court | Case | Ch | Date Filed | Date Closed | Disposition |
|---|---|---|---|---|---|---|
| 1  KSL Media Inc (cr) | cacbke | 1:08-bk-16036 | 7 | 08/15/2008 | 09/19/2013 | Discharge Not Applicable |
| 2  KSL MEDIA INC (db) | cacbke | 1:13-bk-15929 | 7 | 09/11/2013 | | |

Receipt 03/11/2015 13:57:45 151562659

User wf0265new
Client
Description Bankruptcy Party Search
Name KSL Media All Courts Page: 1
Pages 1 ($0.10)

061